# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7527 | **DATE** | 10/23/2003 |
| **CASE TITLE** | In Re: Sears, Roebuck and Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order denying defendants' motions to dismiss. Plaintiffs' motion for class certification will be due by 11/24/03; response by 1/7/04; and any reply by 2/6/04. Ruling set for 3/26/04 at 10:00 a.m. Discovery is ordered closed on 5/31/04. Pretrial order will be due by 6/30/04; and response to any motions in limine by 7/14/04. Pretrial conference set for 7/23/04 at 3:00 p.m. and trial set for 8/2/04 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 18 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | OCT 2 4 2003 | |
| | Notified counsel by telephone. | | date docketed | 91 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 10/23/2003 | |
| | | 03 OCT 23 PM 3:58 | date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE: SEARS, ROEBUCK AND CO. ) No. 02 C 7527
SECURITIES LITIGATION )

DOCKETED
OCT 24 2003

## MEMORANDUM OPINION AND ORDER

Lead plaintiff, the Department of the Treasury of the State of New Jersey and its Division of Investment, brings this action under the Securities Exchange Act of 1934 on behalf of itself and all other persons who purchased securities of defendant Sears, Roebuck & Co. ("Sears") between October 24, 2001 and October 17, 2002 ("class period"). Defendants include Sears, a New York corporation, and several individual former and current officers of Sears. Plaintiffs allege violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Securities Exchange Commission Rule 10-b, 17 C.F.R. § 240.10b-5, and Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a). All defendants have filed motions to dismiss this action pursuant to the Private Securities Litigation Reform Act of 1995 and Fed. R. Civ. P. 9(b). The defendants' motions to dismiss are DENIED.

I.

Sears is one of North America's largest retailers.[1] In

---

[1] On a motion to dismiss, I must treat all well-pleaded allegations in the complaint as true. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997). Therefore, I state the facts as presented in the complaint.

addition to its retail division, Sears also has a business segment that issues credit cards to Sears customers. In 1999, it had 60 million credit accounts. Sears' credit operations represented 58 percent of Sears' operating income by the late 1990's. Initially, Sears offered only proprietary cards; that is, credit cards that could only be used to make purchases in Sears' stores ("Sears cards"). However, use of the Sears cards declined during the 1990's and Sears' retail division was experiencing lower levels of performance. In late 2000, Sears began to market a new credit product, the Sears Gold MasterCard ("MasterCard"). This new card was a general purpose credit card, not a proprietary card like the Sears cards.

Plaintiffs' amended complaint is 96 pages long. Nevertheless, in essence it charges the defendants with making material misstatements that misled shareholders about the risk level of balances in accounts in Sears' credit card portfolio, the delinquencies in those accounts, and the amount of "charge-offs"[2] of unpaid accounts. With respect to the account holders, Sears is alleged to have represented that it began marketing its new MasterCard in the year 2000 by providing the card to existing Sears accounts that were either dormant or fully paid each month. According to Sears, these were a "low-risk group." Thereafter,

---

[2] A "charge-off" is a write-off of a delinquent balance as uncollectible.

2

during the class period, Sears is alleged to have continually informed investors that its credit card division was growing steadily, and that balances in those accounts continued to be low risk. There are commonly three types of account holders identified in terms of analyzing credit card risk: superprime, prime and subprime. While Sears was representing to the public that its accounts were largely superprime or prime, in fact, according to plaintiffs, over half its portfolio balances consisted of subprime or high-risk accounts.

Knowledge of the amount of subprime balances is alleged to be important to a knowledgeable investor in analyzing whether the company has set adequate reserves against projected charge-offs of non-paying accounts. Reserves reduce earnings, so if the reserves are not adequate, requiring a correction at a later time, earnings will be reduced. Plaintiffs allege that Sears misled investors by combining the balances in Sears accounts with its MasterCard accounts, and that the two types of accounts were not fairly comparable. Plaintiffs also say that by combining Sears accounts with MasterCard accounts in describing delinquencies and charge-offs during the class period, defendants materially misled investors to believe, as defendants said at the time, that delinquencies and charge-offs were going down when they were actually rising at a significant rate for each type of account.

The importance of the credit card portfolio to an analysis of Sears' business is demonstrated by its quarterly reports. In January, 2002, Sears announced that $1.5 billion of its $2.202 billion operating income came from its credit card business. Sears' first quarter, 2002 results showed that its credit card portfolio accounted for $443 million of its total operating income of $530 million.

According to plaintiffs, the first that investors heard that Sears might have problems with its credit card portfolio was on October 4 and 7, 2002, when Sears announced that defendant Paul Liska would replace defendant Kevin Keleghan as president of Sears' Credit and Financial Products, and that Mr. Keleghan had been fired after defendant Alan Lacy, Sears' President and Chief Executive Officer, lost confidence in his credibility. These announcements were followed by a statement on October 17 that Sears was increasing its allowance for uncollectible accounts by $222 million, lowering third quarter earnings as well as the year end projection. Sears revealed that its subprime account balances accounted for 48 percent of the credit card portfolio. For the first time it revealed that a year earlier, at the start of the class period, subprime account balances actually exceeded 50 percent of its portfolio. Around this time Mr. Lacy reported that defendant K.R. Vishwanath, Vice President of Risk Management, had also been fired.

As a result of these disclosures, Sears' stock, which had been selling at $59.05 on May 31, 2002, fell to $23.15 on October 17, 2002, the last day of the class period.

## II.

On a motion to dismiss, I accept all well-pleaded factual allegations in the complaint as true and draw all inferences in favor of the non-moving party. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999). Dismissal is only appropriate where it appears beyond doubt that the plaintiff can prove no set of facts to support its claim. *Id.* Under Rule 10b-5, "the plaintiff must establish that (1) the defendant made a misstatement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied (6) and that the false statement or omission proximately caused the plaintiff's damages." *Otto v. Variable Annuity Life Inc. Co.*, 134 F.3d 841, 851 (7th Cir. 1998). "[P]leading fraud with specificity is both an element of the SEC Rule 10b-5 cause of action and a pleading requirement of the Federal Rules." *In re HealthCare Compare Corp. Secs. Litig.*, 75 F.3d 276, 280-81 (7th Cir. 1996); *see also* Fed. R. Civ. P. 9(b). To satisfy the particularity requirement, the plaintiff must allege "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). In addition, the complaint must comply with the

5

pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b), which requires the complaint to specify each allegedly misleading statement and the reasons why it is misleading, and to "state with particularity the facts giving rise to strong inference that the defendant acted with" scienter.

A.

Statements must be both material and misleading to be actionable under Rule 10b-5. Further, the statements must have been false and misleading at the time they were made to be actionable. *Pommer v. MedTest Corp.*, 961 F.2d 620, 625 (7th Cir. 1992). Material statements or omissions are those that have a "substantial likelihood ... [to] have been viewed by the reasonable investor to have significantly altered the total mix of information." *Searls v. Glasser*, 64 F.3d 1061, 1066 (7th Cir. 1995).

Defendants argue generally that plaintiffs fail adequately to allege materially false and misleading statements, and that plaintiffs cannot rely on statements that they characterize as mere puffery. They cannot, and a number of the statements referred to in the complaint, considered by themselves, fall within this category. They cannot be taken out of context, however, and if these statements reinforce factual misstatements and therefore contribute to ongoing deception, they may become actionable. *See, e.g., Scritchfield v. Paolo*, 2003 U.S. Dist. LEXIS 13730 (D.R.I.

6

2003). A number of defendants' alleged statements regarding delinquencies and charge-offs and low risk customers were not, even considered by themselves, mere puffery.[3] They may have led a reasonable investor to conclude that Sears had adequate reserves for uncollectible accounts. If defendants' various statements with respect to falling delinquencies and balances and adequate reserves were knowingly false, they can be liable for fraud. *E.G., U.S. v. Morris*, 80 F.3d 1151, 1164 (7th Cir. 1996). Furthermore, plaintiffs have adequately pled the "who, what, when, where and how" with respect to specific statements to satisfy Fed. R. Civ. P. 9(b) and the PSLRA.

B.

Defendants also argue that plaintiffs have not alleged sufficient facts to establish scienter. The Seventh Circuit has not addressed what is necessary to raise a "strong inference" of scienter, but courts in this district have applied a test established by the Second Circuit. *See, e.g., Tricontinental v. Anixter*, 215 F. Supp. 2d 942, 949 (N.D. Ill. 2002); *Rehm v. Eagle Fin. Corp.*, 954 F. Supp. 1246, 1253 (N.D. Ill. 1997)(citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). The plaintiff may establish scienter "either (a) by alleging facts to show that defendants had both motive and opportunity to commit

---

[2] Examples are contained in paragraphs 71, 73, 74, 76, 85, 86, 89, 96, 108, 114, 124, 129 and 147 of the Consolidated Amended Class Action Complaint.

7

fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Tricontinental*, 215 F. Supp. 2d. at 949. Reckless disregard of the truth constitutes "scienter." *SEC v. System Software Assoc., Inc.*, 145 F. Supp. 2d 954, 957 (N.D. Ill. 2001).

Plaintiffs argue that the particular executive positions held by the individual defendants establish a strong inference of conscious misbehavior or recklessness. The individual defendants were all executive officers of Sears during the class period: Alan Lacy was Sears' CEO, President and Chairman; Glenn Richter was Sears' senior vice president for Finance until October 4, 2002, when he became senior vice president and CFO; Paul J. Liska was Sears' CFO and an executive vice president until October 4, 2002, when he became executive vice president and president of Sears' Credit and Financial Products segment; Thomas E. Bergmann was Sears' vice president and controller, Principal Accounting Officer, since March 2002; Kevin T. Keleghan was an executive vice president and president of Sears' Credit and Financial Products segment until October 4, 2002; and K.R. Vishwanath was Sears' vice president of Risk Management until October 4, 2002. The credit card portfolio, especially the new MasterCard segment, was a core portion of Sears' business. According to plaintiffs, Sears' credit division accounted for 58 percent of Sears' operating income in 1998 and 1999. As noted above, use of the Sears cards was declining, and

Sears expected the new MasterCard to provide a major area of growth for the company.

Officers of a company can be assumed to know of facts "critical to a business's core operations or to an important transaction that would affect a company's performance." *Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833, 850 (N.D. Ill. 2003). Plaintiffs allege that defendants knew non-public information about Sears, including information that made many of the alleged misstatements false and misleading. Information about the growth and development of the new MasterCard was clearly critical to Sears' "core operations." Plaintiffs specifically allege that the positions held by each of the individual defendants during the class period gave them knowledge of the specific information in question. Their allegations are backed up by the statements in the complaint about the numerous statements made by various defendants about the credit portfolio and about its effect on Sears' profits. Logically, defendants in their positions would be expected to have knowledge of the facts regarding the credit card portfolio at the time they were making statements about the portfolio or signing off on SEC filings. Plaintiffs have sufficiently alleged facts leading to a "strong inference" of scienter.

III.

Plaintiffs also allege violations of Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a). Section 20(a)

states: "Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). To state a violation of Section 20(a), plaintiffs must allege (1) that the defendant actually exercised general control over the operations of the entity and (2) that the defendant had the power or ability to control the specific acts constituting the primary violation. *Donohoe v. Consol. Operating & Prod. Corp.*, 982 F.2d 1130, 1138-39 (7th Cir. 1992). Plaintiffs have alleged these facts. Complaint ¶¶ 236-238. Determination of whether an individual defendant is a "'controlling person' under § 20(a) is a question of fact that cannot be determined at the pleading stage. *Lindelow*, 2001 WL 830956, at *9 (citing *In re Discovery Zone Sec. Litig.*, 943 F. Supp. 924, 943 (N.D. Ill. 1996)). Further, § 20(a) has neither a scienter requirement nor a heightened pleading requirement. *See, e.g., Chu v. Sabratek Corp.*, 100 F. Supp. 2d 827, 843 (N.D. Ill. 2000). Plaintiffs have sufficiently alleged violations of § 20(a).

IV.

Plaintiffs have alleged facts with sufficient particularity to establish a claim for violations of Section 10(b) of the Securities Exchange Act of 1934. Plaintiffs have also properly alleged violations of Section 20(a) of the Act. I therefore DENY defendants' motions to dismiss these claims.

ENTER ORDER:

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: October 23, 2003